UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN SHORT

                Petitioner,

 -against-

UNITED STATES OF AMERICA

                Respondent.

---

24-CV-3976
19-CR-704

<u>MEMORANDUM & ORDER</u>

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is Petitioner Steven Short's ("Petitioner") <u>pro se</u> motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] The Government opposed the motions,[2] and Petitioner replied.[3] For the reasons set forth below, the Amended Motion is DENIED.

---

[1] (<u>See</u> Mot. to Vacate Under 28 U.S.C. § 2255 (the "Motion"), dated May 13, 2024 [cv. dkt. no. 1]; First Am. Mot. to Vacate Under 28 U.S.C. § 2255 (the "Amended Motion"), dated Sept. 4, 2024 [cv. dkt. no. 10]; Mem. of Law in Supp. of Pet'rs Mot. to Vacate Under 28 U.S.C. § 2255, dated May 13, 2024 [cv. dkt. no. 5]; Mem. of Law in Supp. of Pet'rs First Am. Motion to Vacate Under 28 U.S.C. § 2255, dated Sept. 20, 2024 [cv. dkt. no. 12].)
[2] (<u>See</u> Gov't Opp'n to Mot. to Vacate Under 28 U.S.C. § 2255, dated Aug. 23, 2025 [cv. dkt. no. 8]; Gov't Opp'n to First Am. Mot. to Vacate Under 28 U.S.C. § 2255, dated Oct. 10, 2024 [cv. dkt. no. 13].)
[3] (<u>See</u> Pet'r Reply to the Gov't Opp'n to First Am. Mot. to Vacate Under 28 U.S.C. § 2255, dated Nov. 14, 2024 [cv. dkt. no. 14].)

I.  **Background**

   **A. Indictment**

On July 8, 2021, a grand jury charged Petitioner and co-conspirators in a four-count superseding indictment. (See cr. dkt. no. 81.) Petitioner was charged on two counts. Count One charged Petitioner with conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. §§ 1343 and 1344. (See id. at 1-13.) Count Two charged him with conspiracy to make false statements to a bank in violation of 18 U.S.C. § 1014. (See id. at 14-21). Petitioner retained Robert D. Eckard of the Law Office of Robert Eckard & Associates, P.A. to represent him following the superseding indictment. (See cr. dkt. no. 93.)

   **B. Plea Agreement and Guilty Plea**

Petitioner pled guilty to Count One under the terms of a Plea Agreement entered with the Government. (See cr. dkt. no 228-1 at 1). In the Plea Agreement, the parties stipulated that the loss amount exceeded $9,500,000 but did not exceed $25,000,000, amounting to a 20-point enhancement under the U.S. Sentencing Guidelines (the "Guidelines"). (See id. at 2.) With an offense level of 28 and a criminal history category of I, Petitioner's Guidelines range was 78 to 97 months' imprisonment. (See id. at 2-3.) Additionally, Petitioner agreed to waive his right to a direct appeal and a collateral challenge if he received a sentence within or below the Stipulated Guidelines Range but maintained his

right collaterally to attack his sentence on ineffective assistance of counsel grounds. (See id. at 4-5.)

On August 16, 2022, this Court virtually presided over the plea proceedings and accepted the plea. (See cr. dkt. no. 135 [the "Plea Tr."].) During the proceedings, Petitioner acknowledged that he discussed the indictment with Mr. Eckard before he read, signed, and discussed the contents of his Plea Agreement to the point where he "ha[d] all of [his] questions answered." (Id. at 6:20-23.) Petitioner recognized that he would "not be able to withdraw [his] plea on the ground that [his] lawyer's prediction or anybody else's prediction as to the applicable sentencing guidelines range or as to the actual sentence turns out not to be correct" and acknowledged that he was "fully satisfied with the advice, counsel, and representation given to [him] by [his] attorney, Mr. Eckard." (Id. at 6:20-25; 7:1-14; 11:13-17; 11:22-25.)

### C. Sentencing

The Probation Office prepared a Presentence Investigation Report ("PSR"), containing the same calculations as those in the plea agreement. (See cr. dkt. no. 161 at 18-21.)

Mr. Eckard submitted a sentencing memorandum arguing some aspects of the PSR were incorrect. (See id.) Specifically, he argued that the stipulated loss amount, between $9,500,000 and $25,000,000, "required a deeper analysis and consistent with the

3

United States Sentencing Commission 2015 Amendment by amending Application Note (3)(A)(ii) to § 2B1.1, should focus more specifically on the [sic] on the [Petitioner's] culpability." (<u>Id.</u> at 20 fn. 12.) He objected to paragraph 23 of the PSR arguing there was "no further role adjustment or loss amounts provided by the Government" and that the loss exceeding $9,500,000 was "attributed not to [Petitioner] exclusively," but to the other co-defendants in the FTC proceeding. (<u>Id.</u> at 27.) With his objections, Mr. Eckard argued for a sentence of 30-41 months' imprisonment. (<u>See</u> <u>id.</u> at 22.)

The Government responded to Mr. Eckard's objections by 1) explaining its calculation being the loss number in the sentencing submission[4] and 2) proposing to amend paragraph 23 of the PSR to acknowledge Petitioner was not the only responsible party.[5] (<u>See</u> cr. dkt. no. 166 at 17.)

---

[4] "As to the loss amount, it is $12,365,731. As noted above, this is the precise amount to which [Petitioner], Dyar, and E.M. Systems (as well as Becker and others) stipulated in settling civil charges with the FTC. That number derives from the $19,718,305 in gross receipts that E.M. Systems took from its customers, less the more than $6 million in refunds and chargebacks that such customers successfully demanded during the course of the fraud scheme." (Cr. dkt. no. 166 at 17 (citations omitted).)

[5] "[Petitioner] and his co-conspirators are responsible for a loss amount of $12,365,731. The leader of the scheme was Brandon Becker, who supervised co-conspirators at CardReady, including [redacted]. [Petitioner] actively participated in the conspiracy, and was the principal contact for the underlying telemarketing scheme." (Cr. dkt. no. 166 at 17.)

This Court sentenced Petitioner on May 2, 2023. (See cr. dkt. no. 228-2 ["Sent. Tr."].) At the proceeding, Mr. Eckard confirmed he had no objection to the Government's proposed amendment to Paragraph 23 of the PSR. (See id. at 6:4-23.) After explaining its rationale, this Court imposed a sentence of 78 months' imprisonment consistent with the Guidelines. (See id. at 51-54.) It also reduced the Petitioner's restitution amount from $1,912,090.05 to $1,910,600.05 to account for payments made to third party victims. (See id. at 55:1-6.)

### D. Procedural Background

On May 13, 2024, Petitioner filed this instant pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (See Motion.) Petitioner argues his counsel, Mr. Eckard, was constitutionally ineffective because he "[f]ail[ed] to [p]roperly [e]xplain the [s]entencing [e]xposure [b]efore [a]dvising [Petitioner] to [p]lead [g]uilty." (Id. at 11.) Specifically, the Motion alleges that Mr. Eckard "fail[ed] to (1) independently calculate the [claimed] loss amount to verify its accuracy and (2) challenge[] the clearly erroneous loss amount assumed by the government." (Id.)

On August 28, 2024, the Court directed Petitioner to file a proposed amended petition. (Cv. dkt. no. 9.) Petitioner then filed an Amended Motion alleging Mr. Eckard, "fail[ed] to ensure . . . that the actual range of loss stipulated to in the plea

5

agreement was off-set by the payments made by customers who never once intimated, suggested, or alleged they were dissatisfied with the services [Petitioner] sold them." (Cv. dkt. no. 14 at 7.) The Government opposed both motions, contending the Amended Motion does not relate back to the Motion and that counsel was not constitutionally ineffective. (See cv. dkt. nos. 8, 13.)

## II.  **Legal Standards**

### A. The Habeas Statute

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds, inter alia, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). On a Section 2255 motion, Petitioner bears the burden of proof by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000). The Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C § 2255. To warrant a hearing, "the motion must set forth specific facts by competent evidence, raising issues of fact that, if proved at a hearing, would entitle him to relief." Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013).

Section 2255(f) imposes a one-year limitations period on the filing of a motion to vacate. The clock presumptively starts to

run on "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).

### B. Relation Back

A motion to amend a prior Section 2255 petition is governed by Federal Rule of Civil Procedure 15.  Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001).  Leave to amend "shall be freely given when justice so requires," but it may be properly denied where, among other things, there is "undue prejudice to the opposing party by virtue of allowance of the amendment[.]"  Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), pleadings may be amended when the amended pleading relates back to the original pleading—that is, if it "ar[i]se[s] out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  Courts have found "[r]elation back turns on the facts underlying a claim, not the legal theory."  Munoz v. Burge, No. 02-CV-6198 NGG, 2010 WL 3394696, at *5 (E.D.N.Y. Aug. 20, 2010) (citing Mayle v. Felix, 545 U.S. 644, 646 (2005)).  In the habeas context, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  Mayle, 545 U.S. at 664.

Further, it is well-settled that "pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted). Courts have applied this general reasoning of pro se pleadings to pro se motions filed pursuant to Section 2255. See id. ("We see no reason why the general rule should not apply to pro se motions filed pursuant to [S]ection 2255.").

### C. Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must (1) illustrate that his counsel's conduct fell below the "objective standard of reasonableness," and (2) "affirmatively prove prejudice." Rodriguez v. United States, No. 10 CIV. 5259 (KTD), 2011 WL 4406339, at *2 (S.D.N.Y. Sept. 22, 2011) (quoting Strickland v. Washington, 466 U.S. 668, 693-94 (1984)). "[A] Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Prejudice is established if Petitioner demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The question is not whether the attorney adhered to best practices or customs, rather it looks at whether the "attorney's representation amounted to incompetence under the

prevailing professional norms." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted).

In the context of plea offers, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). In order to show Strickland prejudice with respect to counsel's handling of a proposed plea, Petitioner "must demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011). While Petitioner can offer his own statement in support of that showing, "in order for the statement to be sufficiently credible to justify a full hearing, it must be accompanied by some 'objective evidence,' such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised." Id. (quoting Puglisi v. United States, 586 F.3d 209, 215-16 (2d Cir. 2009)).

## III.  Discussion

For the reasons stated below, although the Amended Motion is time-barred, it relates back to the original Motion and can be considered by this Court. However, the Amended Motion is DENIED because it fails on the merits.

### A. The Amended Motion Relates Back

The Amended Motion can be considered because it relates back to the Motion.  Documents can relate back if the original pleading gave the respondent fair notice of the newly alleged claims.  See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 150 n. 3 (1984).  Respondents have notice when "the claims added by amendment arise from the same core facts as the timely filed claims."  Mayle, 545 U.S. at 657.  Petitioner's Motion contains the same ineffective assistance of counsel issue and claims of the same "time and type" about sentencing exposure.  Because Petitioner argues counsel was defective for failing to properly explain sentencing exposure when pleading guilty, and considering the leniency given to pro se litigants, the claims sufficiently relate back to the timely Motion.  As such, the Amended Motion may be considered on the merits.

### B. Counsel was Not Constitutionally Ineffective

Petitioner has not established that he was deprived his Sixth Amendment right to counsel.

To start, Petitioner has not shown anything more than a statement saying he would not have accepted the plea under the agreed upon terms.  A statement from Petitioner that he would have plead not guilty, without more, is not sufficient to establish prejudice for ineffective assistance of counsel.  See Lee v. United States, No. 07-CR-00003 (LAP), 2023 WL 5509046, at *7 (S.D.N.Y.

Aug. 25, 2023). While Petitioner alleged in his motions that but for counsel's alleged errors, he would have plead not guilty and gone to trial, these statements contradict Petitioner's assertions at his plea allocution. At his plea allocution, Petitioner acknowledged that he read and understood his plea agreement, signed it, and discussed it with his attorney. (See Plea Tr. at 6:20-25; 7:1-14; 11:13-18.) Courts must consider these statements from the plea allocution because "declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). In light of that presumption, the Court may deny Section 2255 motions when the allegations contradict these in-court statements. See, e.g., United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d. Cir. 1992); Oruche v. United States, No. 20-CR-00657 (MKV), 2024 WL 3728702, at *4 (S.D.N.Y. Aug. 7, 2024); Hill v. United States, No. 11-CR-145 (LAP), 2014 WL 104565, at *8 (S.D.N.Y. Jan. 7, 2014). Because the statements at the plea allocution "control over . . . conclusory statements that counsel was ineffective," Petitioner's motion cannot survive. Brown v. United States, 637 F.Supp.2d 212, 223 (S.D.N.Y.2009). Not only does Petitioner acknowledge he understood the plea agreement, but he also acknowledged, under oath, that he was "fully satisfied with the advice, counsel, and representation given to [him]." (Plea Tr. at 11:22-25.) Following Petitioner's sworn statements,

this Court finds no basis to conclude that Mr. Eckard's conduct fell below the objective standard of reasonableness.

Notwithstanding the statements made at the plea allocution, Petitioner's claims would fail because he has not shown prejudice. In order to show prejudice, movants must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This requires a showing that it would have been rational under the circumstances to reject the plea bargain. See Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).

Petitioner has not shown it would have been rational to reject the plea agreement. "[C]lear and tangible benefits[s]" cut against a finding that Petitioner was prejudiced by the advice to accept a plea agreement. Cardenas v. United States, No. 17-CR-339 (AJN), 2022 WL 1213338, at *4 (S.D.N.Y. Apr. 25, 2022). Petitioner undoubtedly benefitted from his plea agreement – the Government agreed to no longer prosecute him for Count Two of the indictment. (See cr. dkt. no. 228-1 at 1.) In fact, on the grounds that Petitioner challenged the plea agreement – on the sentencing range – Mr. Eckard's advocacy resulted in the PSR being amended. (See cr. dkt. no. 161 at 20-22; see also cr. dkt. no. 166 at 17.) As a result, Petitioner was sentenced to 78 months imprisonment – the lowest end of the agreed upon Guidelines range. (See Sent. Tr. at

54:18-21.)  As such, Petitioner was not prejudiced by his counsel's performance.

**IV.**    <u>**Conclusion**</u>

Accordingly, Petitioner's motion for a sentence reduction is DENIED.

Because Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  <u>See</u> 28 U.S.C. § 2253(c).  The Court certifies that any appeal from this Order would not be taken in good faith.  <u>See</u> 28 U.S.C. § 1915(a)(3); <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close cr. dkt. no. 213 in 19-CR-704 and cv. dkt. no. 10 in 24-CV-3976.  The Clerk of the Court is directed to close 24-CV-3976 in its entirety.

**SO ORDERED.**

Dated:     April 10, 2025
           New York, New York

_____
LORETTA A. PRESKA
United States District Judge